FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PATRICIA B.,

             Plaintiff,

             v.

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF
SOCIAL SECURITY,[1]

             Defendant.

No. 4:21-CV-05023-JAG

ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

     **BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 16, 18. Attorney Chad Hatfield represents Patricia B. (Plaintiff); Special Assistant United States Attorney Joseph J. Langkamer represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 5. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

## I.    JURISDICTION

Plaintiff protectively filed an application for Disability Insurance Benefits on August 14, 2018 alleging disability since August 20, 2017, due to impairments including traumatic brain injury (TBI), migraines, speech problems, mobility/stability issues, vision problem, diabetes, depression, and anxiety. Tr. 77, 85, 210-218. The applications were denied initially and upon reconsideration. Tr. 104-06, 110-16. Administrative Law Judge (ALJ) Jesse K. Shumway held a hearing on July 14, 2020, Tr. 36-75, and issued an unfavorable decision on July 27, 2020. Tr. 12-31. Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on December 14, 2020. Tr. 1-6. The ALJ's July 2020 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 6, 2021. ECF No. 1.

## II.    STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was born in 1979 and was 37 years old on the alleged disability onset date. Tr. 25. She has a ninth-grade education and a GED. Tr. 810. She has prior work experience as a retail worker. *Id.* Plaintiff was involved in a motor vehicle accident (MVA) when her car was rear-ended on August 20, 2017; she was diagnosed with a concussion and neck pain. Tr. 474, 477-78, 480-81.

## III.    STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.

*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## IV.   SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 404.1520(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform other work that exists in significant numbers in the national economy. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v).

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

## V.    ADMINISTRATIVE FINDINGS

On July 27, 2020 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 12-31.

At **step one**, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2023 and had not engaged in substantial gainful activity since August 20, 2017 the alleged onset date. Tr. 17-18.

At **step two**, the ALJ determined Plaintiff had the following severe impairments: anxiety, depression, psychogenic seizures. Tr. 18.

At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18-20.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [S]he cannot climb ladders, ropes or scaffolds; she can have no exposure to hazards such as unprotected heights and moving mechanical parts; she is limited to simple, routine tasks; and she requires a routine, predictable work environment with no more than occasional changes and no assembly-line pace or other fast-paced work.

Tr. 20.

At **step four**, the ALJ found Plaintiff could perform past relevant work as a sales attendant. Tr. 24.

At **step five**, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could also perform jobs that existed in significant numbers in the national economy, including the jobs of facility storage rental clerk, floor waxer, and router. Tr. 25.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. Tr. 26.

## VI.   ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ conducted a proper step-two analysis; (3) whether the ALJ conducted a proper step-three analysis; (4) whether the ALJ properly evaluated Plaintiff's subjective complaints; and (5) whether the ALJ conducted a proper step-five analysis.

## VII.   DISCUSSION

### A.   **Medical Opinion Evidence.**

Plaintiff alleges the ALJ erred by improperly disregarding the opinion of K. Mansfield-Blair, PhD. ECF No. 16 at 10-12.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings. *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an

understanding of Social Security's disability program). 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). The ALJ may explain how he or she considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The Ninth Circuit recently addressed the issue of whether the new regulatory framework displaces the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790,

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

792. Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id*. at 792.

On July 20, 2019 Plaintiff attended a mental consultative examination with Dr. Mansfield-Blair. Tr. 800-805. Dr. Mansfield-Blair diagnosed Plaintiff with an unspecified anxiety disorder. Tr. 804. She opined Plaintiff would have difficulty performing simple and repetitive tasks, "given her performance on memory tasks and despite an estimated level of intelligence in the Low Average range," and that she would also have difficulty performing detailed and complex tasks. Tr. 804. She opined Plaintiff would not have difficulty accepting instructions from supervisors, she would not have difficulty interacting with coworkers and the public; and that she would not have difficulty performing work activities on a daily basis without special or added instructions or added information, given her performance on memory tasks and estimated level of intelligence in low average range. Tr. 804-05. Dr. Mansfield-Blair further opined Plaintiff would have difficulty maintaining regular attendance and completing a normal workday/work week without interruptions from a psychiatric condition, given a current lack of mental health treatment; and that she would have difficulty dealing with the usual stress encountered in the workplace as she exhibited a minimally adequate level of distress tolerance skill during the interview. Tr. 805.

The ALJ found Dr. Mansfield-Blair's opinion unpersuasive because it was "contradicted by the much more thorough neuropsychological evaluation" of Dr. Wald Baker, PsyD, "in which . . . objective testing demonstrated little to no cognitive impairment." Tr. 24. The ALJ also found Plaintiff's "presentation during the psych CE is significantly exaggerated when compared to presentation in treatment notes, which show little to no stuttering and normal cognitive functioning." Tr. 24. Plaintiff contends the ALJ erred because Dr. Mansfield-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Blair's opinion is consistent with the neuropsychological exam and also another evaluation by Dr. Musnick, which the ALJ did not consider. ECF No. 16 at 10-11. Defendant contends the ALJ reasonably evaluated Dr. Mansfield-Blair's opinion under the new regulations and reasonably found the opinion lacked thoroughness and conflicted with other records. ECF No. 18 at 11-14.

The Court finds the ALJ did not err. First, the ALJ found Dr. Mansfield-Blair's opinion was contradicted by the neuropsychological evaluation of Dr. Wald Baker, PsyD. Tr. 24. The more relevant objective evidence and supporting explanations that support a medical opinion and the more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. § 404.1520c(c)(1)-(2). On July 23, 2019 and August 11, 2019, Dr. Wald Baker performed a neuropsychological evaluation to assess Plaintiff's cognitive and emotional functioning. Tr. 808-11, 818-26. The ALJ reasonably found that Dr. Wald Baker's evaluation was more thorough than Dr. Mansfield-Blair's exam, as the neuropsychologist performed formal testing, which revealed a person "average estimated premorbid and current intellectual functioning whose neuropsychological profile is generally within normal limits." Tr. 821. Dr. Wald Baker explained neuropsychological testing showed "no frank areas of cognitive impairment," and opined "overall this patient's current neuropsychological profile demonstrates no evidence of a lateralizing process nor is it strongly suggestive of a patten seen in an underlying neurological condition"; she noted "[r]ather, her cognitive profile is generally intact and notable for mild, variable inefficiencies in basic attention, encoding, and problem solving." Tr. 821-22. She also noted Plaintiff was "also reporting significant psychological distress (e.g., moderate depression and mild anxiety)" and that "as such, it is likely that ongoing suboptimally treated psychological symptoms, current stressors, and poor coping

skills are contributing to her current cognitive complaints and impacting her functional abilities." Tr. 822.

The ALJ reasonably found that Dr. Wald Baker's evaluation was more persuasive than Dr. Mansfield-Blair's consultative exam because Dr. Wald Baker's findings were supported by her clinical interview along with formal neuropsychological testing; Dr. Wald Baker also performed validity testing and noted that "[o]bjective measures of performance validity were within normal limits. As such, results are considered an accurate representation of the patients current neurocognitive and emotional functioning." Tr. 821. While Dr. Mansfield-Blair based her opinion partially on Plaintiff's presentation, noting her speech was slurred and she stuttered at times," Dr. Mansfield-Blair did not indicate she performed any validity testing, as Dr. Wald Baker did, and Dr. Wald Baker did not indicate any such symptoms at her evaluation; she met with Plaintiff for an intake interview three days after Dr. Mansfield-Blair's consultative examination, and conducted formal neurological testing a few weeks later. *See* Tr. 800-05, 808-12, 818-25.

The ALJ also concluded Plaintiff's presentation during Dr. Mansfield-Blair's 2019 consultative evaluation was "significantly exaggerated when compared to presentation in treatment notes, which show little to no stuttering and normal cognitive functioning." Tr. 24 (citing Tr. 630, 635, 728, 791, 837-38, 846, 900, 904). Records from March 2018 show that she reported her "stuttering has completely resolved and her [headaches], nausea, vomiting, vision and other issues are almost completely resolved." Tr. 642.  While she reported she was stuttering again at an appointment in February 2019, her neurologist noted her neurological exam was otherwise normal and that "[w]hen she speaks she stutters at times that is not consistent [sic]" she also indicated the "stuttering which she [is] experiencing right now usually [is] nonneurologic." Tr. 795.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

"[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Additionally, even if the evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ reasonably found Dr. Mansfield-Blair's opinion less persuasive than the opinion of Dr. Wald Baker because Dr. Wald Baker's evaluation was more thorough and more consistent with treatment notes/evidence from other sources, and the ALJ's findings are supported by substantial evidence.

While Plaintiff argues the ALJ erred by failing to consider the consistency of Dr. Mansfield-Blair's opinion with "independent neuropsychological testing, for which the ALJ failed to account," in regard to a consult by Dr. Musnick, ECF No. 16 at 11-12, review of the record shows Dr. Musnick is certified in sports medicine/internal medicine, Tr. 599, and there is no evidence of neuropsychological testing at his appointments; he noted, in fact, that Plaintiff had not had any when he saw her in 2018. *See e.g.*, Tr. 596-99. There is also no evidence he provided any opinion regarding plaintiff's functional capacity. *Id.*

The Court finds the ALJ's discussion of the medical opinion evidence is supported by substantial evidence.

**B.    Step Two.**

Plaintiff contends the ALJ erred at step two by rejecting Plaintiff's traumatic brain injury (TBI) and migraine headaches as severe impairments. ECF No. 16 at 12-13.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has any medically determinable severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight

abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities or does not meet the duration requirement. 20 C.F.R. §§ 404.1509, 404.1522; SSR 85-28.[2]

The claimant bears the burden of demonstrating that an impairment is medically determinable and severe. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ determined Plaintiff's concussion and migraine headaches were non-severe. Tr 18. Plaintiff contends the ALJ failed to mention TBI and ignored evidence of migraine headaches during the period at issue. Tr. 12-13. Defendant contends Plaintiff failed to show any error in the ALJ's step-two findings, the ALJ reasonably found that her concussion and migraines were not severe, and the ALJ's RFC accounted for all her impairments. Tr. 15-17.

The Court finds the ALJ did not err. At step two, the ALJ noted her history of concussion and migraines during the period at issue. Tr. 18. The ALJ found that the medical evidence of record showed improvement in her conditions, and that based on the testimony of the medical expert at the hearing, Dr. Jahnke, these conditions did not meet durational requirements. Tr. 18 (citing Tr. 40-42, 632, 642, 808, 834). While Plaintiff points to evidence her migraine medication, Topamax, was increased in 2019, ECF No. 16 at 13, the records Plaintiff cites to show her

---

[2] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

neurologist's report that while she has a history of migraine headaches for which she takes Topamax, it was "because of her history of seizures her Topamax has been increased . . . she denied any headaches." Tr. 903. The neurologist further noted "if she continues to do well with cognitive behavioral therapy [as her seizures were determined to be nonepileptic in nature] she doesn't need to be on this high of a dose of Topamax for migraine prevention." Tr. 905. The ALJ reasonably found these impairments nonsevere.

Plaintiff has not met her burden in demonstrating her impairments are severe nor that the ALJ harmfully erred in finding the impairments non-severe. Plaintiff is not entitled to remand on these grounds.

**C.    Step Three.**

Plaintiff contends the ALJ erred at step three by failing to conduct an adequate analysis and failing to find the Plaintiff disabled. ECF No. 16 at 13-16. At step three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the listing. *Tackett*, 180 F.3d at 1099. If a claimant's condition meets or equals a listing, the claimant is considered disabled without further inquiry. 20 C.F.R. § 404.1520(d). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d). "To *equal* a listed

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id.*  However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683. Further, "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  SSR 17-2p, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal any listings, including listing 11.18 for TBI. Tr. 18-19. Plaintiff argues the ALJ failed to consider her TBI as a severe impairment and failed to properly consider evidence that supports listing 11.02 and 11.18. ECF No. 16 at 13-16. Defendant contends the ALJ reasonably found Plaintiff's impairments were not severe enough to satisfy the listing criteria at step three, and that Plaintiff did not meet her burden to prove her impairments met or medically equaled the criteria of any listing. ECF No. 18 at 17-18.

The Court finds the ALJ did not err. The step three findings by the ALJ must be read in conjunction with the entire ALJ decision. SSR 17-2p, 2017 WL

3928306, at *4. Here, under the step three finding the ALJ explained Plaintiff did not meet or equal the severity of any listed impairment, and also briefly explained findings related to the relevant listings. Tr. 18-20. The ALJ concluded there was no evidence of a TBI, noting Plaintiff reported no loss of consciousness at the time of the accident and that imaging showed no abnormalities. Tr. 19 (citing Tr. 450-51, 474, 585-86). The ALJ further found that to the extent her concussion "could be considered a TBI, I would nevertheless find the [Plaintiff] much less than markedly limited in all domains of the listing." Tr. 19. He noted "her neuropsychological testing was quite normal, and according to reports to providers … her activities of living remain quite intact." *Id.* (citing *e.g.*, Tr. 810).

Further, the ALJ relied on the testimony of the medical expert, Dr. Jahnke, who testified that Plaintiff had post concussive symptoms, including headaches, lasting just under a year, which improved with treatment including physical therapy. Tr. 40-43. Upon questioning by the ALJ as to whether the evidence established a brain injury, Dr. Jahnke testified that Plaintiff's providers "felt she had a concussion . . . so that's a mild traumatic brain injury." Tr. 45. Dr. Jahnke testified, however:

> It's not what I would consider – the listing is really addressing are people who've had . . . major trauma to the brain or a[n] . . . explosion related to military service or industrial injury of the like. But . . . when you read about post-concussion . . . they'll call it a mild traumatic brain injury, but I don't believe it's really what they're discussing [in] the listing."

Tr. 44-45.

The ALJ reasonably assessed Plaintiff's impairments at step three, and factual findings later in the ALJ's decision also describe evidence with sufficient specificity, adequately supporting the ALJ's step three determination throughout the decision. Plaintiff has failed to articulate how any of her impairments (or

combination of impairments) meets or equals the criteria of any listed impairment and has not met the burden of demonstrating she meets or equals any listing. Additionally, courts will not find an ALJ has erred in determining whether combined impairments equal a listed impairment unless the Plaintiff has offered a "plausible theory" of medical equivalency. *See Kennedy*, 738 F.3d at 1176-77 (citing *Lewis*, 236 F.3d at 514). Plaintiff has not done so here.

The ALJ's analysis in its entirety is sufficient for the Court to meaningfully review the ALJ's finding that Plaintiff's impairments did not meet or equal the criteria of any listing, and Plaintiff is not entitled to remand on this basis.

**D.    Subjective Complaints.**

Plaintiff contends the ALJ improperly rejected her subjective complaints. ECF No. 16 at 16-20. It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of

those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. The ALJ found Plaintiff's allegations were inconsistent with the objective evidence; records showed inconsistent reports to providers; Plaintiff has a minimal work history prior to her allegations of disability; she has failed to comply with treatment recommendations; and there is evidence of symptom exaggeration/malingering. Tr. 22-23. Plaintiff argues the ALJ improperly rejected Plaintiff's subjective complaints. ECF No. 16 at 16-20. Defendant argues that even if the evidence did not amount to malingering, there is evidence Plaintiff exaggerated her symptoms and the ALJ reasonably interpreted the record. ECF No. 18 at 4-11.

## 1. *Inconsistent Objective Medical Evidence.*

The ALJ found the objective medical evidence does not fully support the level of limitations claimed. Tr. 21-22. Although it cannot serve as the sole ground for rejecting a claimant's symptom statements, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ found while there was evidence Plaintiff was involved in a motor vehicle accident in August 2017, records show she "specifically denied loss of consciousness and EMS workers reported she was ambulatory on the scene and acting appropriately." Tr. 21 (citing Tr. 474).[3] The ALJ noted exam findings at the time showed a small hematoma on her forehead and generalized tenderness in the neck but was otherwise normal with no evidence of neurological, motor, or cognitive deficits. *Id.* (citing Tr. 476). The ALJ noted imaging including MRI and CT of Plaintiff's brain was unremarkable. *Id.* (citing Tr. 450-51, 459-60). The also ALJ noted while

---

[3] The ALJ provides the incorrect citation here, citing to "16F, p. 63" in what appears to be a scrivener's error. The correct citation is 1F, p. 63, which is Tr. 474.

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

Plaintiff subsequently reported weakness, facial droop, speech difficulties, cognitive problems, and seizure activity, extensive workup including repeat imaging, neurological exams, EEG, and neuropsychological testing was normal. *Id.* (citing Tr. 448-49, 585-87, 728, 791, 795-98, 808-09, 819-22). The ALJ noted exams 12 months after her accident showed no cognitive deficits, normal mental status and, usually, a normal gait. *Id.* (citing Tr. 810, 834, 904). The ALJ also noted her reports of "significant ongoing cognitive deficits . . . is markedly inconsistent with the thorough neuropsychological testing" performed by Dr. Wald Baker, described *supra*, which showed "intact cognitive abilities with the exception of mild, variable inefficiencies in basic attention, encoding, and problems solving"; the ALJ noted Plaintiff performed within the average range on this testing and that there were no areas of frank cognitive impairment. Tr. 21 (citing Tr. 819-822).

The ALJ's interpretation of the record is reasonable. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must also consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). On this record, the ALJ reasonably concluded that the objective medical evidence is not consistent with Plaintiff's complaints of disabling symptoms. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

### 2. *Inconsistent Reports.*

The ALJ found that Plaintiff's reports to providers were inconsistent with her disability allegations. Tr. 22. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen*, 80 F.3d at 1284. Here, the ALJ concluded that Plaintiff's reports of disabling symptoms with extremely limited activities of daily living were inconsistent with contemporaneous reports to providers. Tr. 22. For example, the ALJ cited to records from March 2020, noting she reported "no seizures in almost six months and significant improvement with walking, speech issues, memory loss, etc." at that time. *Id.* (citing Tr. 833). The ALJ noted that while she testified she suffers five to six debilitating headaches a month, in May 2018 she reported that her headaches, nausea, vomiting, vision and other issues were almost completely resolved. *Id.* (citing Tr. 642).[4] She also denied headaches at an appointment with a neurologist/epilepsy specialist in October 2019; her provider observed normal neurological and mental status findings at that time, along with normal gait and strength, and the provider also noted Plaintiff had just attended her daughter's wedding without any issues. Tr. 903-04.

While Plaintiff reported at the CE in July 2019 that she used a walker full time along with walking sticks, the provider observed no assistive devices at that time, Tr. 802, and at an appointment with the neuropsychologist Dr. Wald Baker a few weeks later, Dr. Baker noted that while her "gait was remarkably halting" she walked independently and "no gross motor, sensory, or perceptual abnormalities were appreciated." Tr. 821. Records from 2020 show she walked without

---

[4] The ALJ provides the incorrect citation here, citing to "16F, p. 16." The correct citation is at 6F, p. 16, which is Tr. 642.

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

restrictions, she was ambulating normally, and her gait, station, and mental status were normal. Tr. 833-34. The ALJ also noted that Plaintiff "told multiple providers immediately after her motor vehicle accident that she did not lose consciousness . . . which is consistent with EMS observations and her initial presentation at the ER." Tr. 22 (citing Tr. 441, 474). The ALJ noted Plaintiff later claimed she did lose consciousness; the ALJ determined that this inconsistency undermined the reliability of Plaintiff's symptom allegations. *Id.* (citing Tr. 503, 505, 808, *see also* Tr. 49).

On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were inconsistent with reports to providers during the period at issue. This finding is supported by substantial evidence and is a clear and convincing reason to discount Plaintiff's symptom claims.

### 3.   *Work History.*

The ALJ found that Plaintiff's "fairly weak work history suggest[s] the explanation for her ongoing unemployment is likely something of longer standing duration tha[n] her current medical conditions." Tr. 23. Evidence of a poor employment history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that she is unable to work. *Thomas v. Banhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Smolen*, 80 F.3d at 1285. Plaintiff's earnings records show limited overall earnings and many years without earnings, and records show she has reported she was home with her children, and also worked a few years in retail before her accident. Tr. 222, 226-28, 810. The ALJ's conclusion is supported by substantial evidence. This finding, coupled with the additional clear and convincing reasons offered by the ALJ as discussed above, is a clear and convincing reason to give less weight to Plaintiff's subjective complaints.

ORDER GRANTING DEFENDANT'S MOTION . . . - 19

### 4.     *No Mental Health Treatment.*

The ALJ found that "plaintiff has sought no mental health treatment despite recommendations from her neurologist and neuropsychological examiner." Tr. 22 (citing Tr. 822,[5] 905). It is well-established that unexplained or inadequately explained non-compliance with treatment reflects on a claimant's credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012); *Tommasetti*, 533 F.3d at 1039; *see also Smolen*, 80 F.3d at 1284 (an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility).

Here, the ALJ noted Plaintiff's testimony that "none of the therapists her neurologist referred her to would accept her insurance, and she was unable to find anyone else locally to take her insurance either." Tr. 22; *see* Tr. 66-69. The ALJ found "that assertion simply not plausible" noting that Plaintiff lives in an area with "many mental health treatment resources available" and the ALJ found "the [Plaintiff] has not shown diligence to seek mental health treatment, as recommended by multiple providers." Tr. 22.

Plaintiff testified that as she understands it, she is supposed to have a specific type of counseling with a neuropsychologist, and the providers in her area who provide this type of counseling do not take her insurance. *See* Tr. 66-69. Additionally, Plaintiff testified that she had called more than the ten providers recommended by Dr. Atkinson, her neurologist; Dr. Atkinson's records appear to support this, as in 2019 Dr. Atkinson noted "she hasn't been able to set up

---

[5] The ALJ again provides an incorrect citation here, citing to "12F, p. 7." Tr. 22. The correct citation is 12F, p. 17, which is Tr. 822.

ORDER GRANTING DEFENDANT'S MOTION . . . - 20

cognitive behavioral therapy with a neuropsychologist yet because of where she lives." Tr. 903.

Dr. Atkinson, however, was not the only provider to refer her for mental health treatment. For example, after determining testing showed Plaintiff's neuropsychological profile was normal in August 2019, the neuropsychologist Dr. Wald Baker "strongly recommended that the patient begin weekly cognitive behavioral therapy (CBT) to process her negative emotions and learn stress management skills. Therapy should also incorporate a sleep hygiene component." Tr. 822. Dr. Wald Baker also noted that "given the severity of her emotional distress, this patient may also benefit from an antidepressant medication as research shows the most efficacious treatment of psychological distress is the combined effect of medication and psychotherapy." Tr. 822. The consultative examiner, Dr. Mansfield-Blair, also opined that some of Plaintiff's limitations were due to Plaintiff's "current lack of mental health treatment," and that "her condition might improve over the next 12 months with engagement in mental health therapy, both individual and group, to learn symptom management strategies and to derive additional support"; she noted "[Plaintiff] may benefit from psychotropic medication," as well. Tr. 804-05.

While Plaintiff provided some explanation for why she had not yet received specialized counseling by a neuropsychologist at the time of the hearing, records indicate multiple providers have recommended mental health counseling and/or antidepressant medication and there is no evidence Plaintiff pursued such treatment. Again, where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of the record as a whole and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks

omitted). On this record, the ALJ reasonably concluded The ALJ's finding plaintiff has sought no mental health treatment despite recommendations is supported by substantial evidence and was a clear and convincing reason to discredit her symptom testimony.

**5.    _Malingering._**

The ALJ also discounted Plaintiff's symptom claims because "the record contains evidence of symptom exaggeration/malingering." Tr. 22. Evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of testimony evidence. _See Matney on Behalf of Matney v. Sullivan_, 981 F.2d 1016, 1020 (9th Cir. 1992) ("The ALJ set out specific findings which were supported by the record . . . [including] well documented motivation to obtain social security benefits.").

Here, the ALJ cites to records showing that a provider noted she "stuttered at times that [are] not consistent," that she had "unsteady gait, can't tandem," and that "this appears be more volitional than true ataxia." Tr. 22 (citing Tr. 795, 900). However, the same provider, her neurologist, also noted in these visits that she wanted to continue to "assess and make absolutely sure there [are] no signs of residual trauma from her car accident" and "wonder[ed] weather or not she may be suffering from nonepileptic seizures and that she is having just tremendous emotional trauma related to the car accident that she sustained." Tr. 796. While her neuropsychological evaluation did not show any evidence of cognitive impairment, it was "thought that a lot of her symptoms are secondary to her anxiety and depression," Tr. 903, and that, in terms of her seizures, these were "most likely … psychogenic nonepileptic seizures secondary to her car accident which was quite traumatic for her emotionally." Tr. 905.

As discussed _supra_, the ALJ reasonably determined Plaintiff had made some inconsistent statements. The ALJ has not, however, cited to any instances in the

ORDER GRANTING DEFENDANT'S MOTION . . . - 22

record to suggest that secondary gain was a primary motivating factor for Plaintiff's disability application. *See* Tr. 15-26. Further, there is no evidence any provider determined she was malingering, and validity testing at her neuropsychological evaluation in 2019 was within normal limits. Tr. 821. Finally, records show untreated mental health impairments, which more than one provider suggested may be causing at least some of her symptoms. Tr. 822, 903. For example, in interpreting the results of neuropsychological testing, Dr. Wald Baker noted that while there was no evidence of an underlying neurologic condition, "it is likely that ongoing sub optimally treated psychological symptoms, current stressors, and poor coping skills are contributing to her current cognitive complaints and impacting her functional abilities." Tr. 822.

Any error by the ALJ in concluding that Plaintiff was malingering or motivated by secondary gain is harmless, however, because the ALJ identified other specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina,* 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

Plaintiff is not entitled to remand on these grounds.

**E.** **Step Five.**

Plaintiff contends the ALJ erred in failing to include all limitations in the hypothetical posed to the vocational expert. ECF No. 16 at 20-21. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to

establish that 1) the claimant can perform other work and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211,1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A claimant fails to establish that a step five determination is flawed by

simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff contends the ALJ erred by relying on the vocational expert's response to an incomplete hypothetical at step four and five. ECF No. 16 at 20-21. However, Plaintiff's argument assumes that the ALJ erred in his analysis of the medical opinion and other evidence. As addressed *supra*, the ALJ properly assessed the medical evidence. The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing past work and other work existing in the national economy, and the RFC adequately addresses the medical opinions and evidence in this record.

Plaintiff is not entitled to remand on these grounds.

### VII.   CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is affirmed. Therefore, **IT IS HEREBY ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy
to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant
and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED September 30, 2022.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 26